398 So.2d 922 (1981)
DICKERSON, INC., Petitioner,
v.
William N. ROSE, as Secretary of the State of Florida, Department of Transportation, Respondent. and
Gate Asphalt Company, Intervenor.
No. ZZ-478.
District Court of Appeal of Florida, First District.
May 7, 1981.
Rehearing Denied June 9, 1981.
*923 John A. Barley, Tallahassee, for petitioner.
H. Reynolds Sampson, Alan E. Deserio and Margaret-Ray Kemper, Tallahassee, for respondent.
Michael J. Dewberry and Robert J. Kelly of Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for intervenor.
PER CURIAM.
This cause concerns a petition for emergency review of nonfinal administrative action. Fla.R.App.P. 9.100; § 120.68(1), Fla. Stat. (1979). The Petitioner, Dickerson, Inc. (Dickerson) requests a stay, previously denied by the Department of Transportation (DOT), prohibiting DOT from implementing and acting in furtherance of agency action as expressed in two letters. The stay is requested pending a final adjudication of the issues raised in the petition for formal administrative hearing, filed by Dickerson with DOT on January 27, 1981 and now transferred to the Division of Administrative Hearings. We granted a temporary stay and issued a show cause order to DOT. Having considered DOT's response, the response filed by Gate Asphalt Co. (Gate) as intervenor, Dickerson's reply, and the parties' presentations at oral argument, we vacate our temporary stay and remand the case for further proceedings.
In November of 1980, Dickerson was the apparent low bidder on four contracts involving three state projects and one federal project to be let by DOT. Gate was the second low bidder on the federal project. In a letter of December 31, 1980, DOT, by the Secretary of Transportation, advised Dickerson of its discovery that Dickerson was unacceptable for employment on federal highway projects requiring the approval of the Federal Highway Administration from January 1, 1981 to December 31, 1981, because it had pleaded guilty to violating Section 1 of the Sherman Act[1] concerning a federal project in North Carolina. Based upon this information, DOT found Dickerson was not a responsible bidder and accordingly, rejected its bids on all four projects.
On January 5, 1981, DOT in writing suspended Dickerson's Certificate of Qualification to bid on state and federal projects for the period January 1, 1981 to December 31, 1981, basing its decision also on the plea of guilty and the action of the Federal Highway Administration as stated above. This letter stated in part:
You are hereby notified that the conclusions contained in this letter will become final within 15 days of receipt of this letter, unless you file a written request for an administrative hearing with the Clerk of Agency Proceedings within the 15-day time period. [Emphasis theirs].
On January 27, Dickerson filed for a formal administrative hearing[2] on the decisions expressed in each letter. Dickerson requested relief in the form of an order vacating the suspension of its Certificate of Qualification and an order awarding the four contracts to it. Simultaneously, Dickerson *924 moved DOT for a stay of the agency action expressed in the letters on grounds identical to the stay requested of this Court. The agency entered a written order denying the motion for stay as to both letters on February 4, 1981.
In opposing the requested stay, DOT urges that Dickerson waived a clear point of entry into Section 120.57(1) proceedings by filing its petition and motion to stay after the 15-day period had expired. We agree that Dickerson did waive a clear point of entry to Section 120.57(1) proceedings to contest the agency action expressed in the January 5th letter. In short, we have considered Dickerson's allegations that DOT, by certain communications occurring during the 15-day period, impliedly suspended or extended the 15-day period and we conclude that the undisputed facts, as stipulated at oral argument and reviewed in a light most favorable to Dickerson, fail to invalidate the effect of the January 5th letter granting Dickerson a clear point of entry, within a specified time, to proceedings under Section 120.57. In contrast to Capeletti Brothers, Inc. v. Dept. of Transportation, 362 So.2d 346 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1374 (Fla. 1979), we find that here an opportunity for proceedings satisfying Section 120.57 were clearly offered by DOT and waived by Dickerson.[3]
To the extent Dickerson implies that the Secretary of Transportation extended the 15-day limit after its expiration, we reject this contention. The unambiguous terms of the letter provided that the conclusions contained therein would become final unless Dickerson filed a written request for a hearing within 15 days. When Dickerson failed to timely invoke APA remedies that were clearly offered to it, the letter, representing free-form or preliminary agency action, became conclusive. Id. Assuming DOT's power to amend this action, we find that it has not effectively done so. The informal oral discussions between Dickerson and the Secretary of DOT indicated only that the Secretary told Dickerson the agency would go ahead with a hearing if it was requested. These statements were insufficient in form and substance to override the clear intent and effect of the January 5th letter, the terms of which DOT relies upon as grounds for denying Dickerson a stay. No contrary letter or order has ever been issued. Under these circumstances DOT is entitled to rely upon the conclusiveness and finality of the letter.
Accordingly, Dickerson waived a clear point of entry into Section 120.57 proceedings concerning the suspension of its Certificate of Qualification to bid for the period January 1, 1981 to December 31, 1981 and therefore, cannot be entitled to a stay in this regard.
The effect of the December 31, 1980 letter, finding Dickerson was not a responsible bidder and rejecting its bid, is more troublesome. This letter affected a separate substantial interest and contained no provisions for filing an administrative complaint. Contrary to DOT's position, Dickerson's waiver of a clear point of entry concerning the action taken in the January 5th letter does not also waive the separate action taken earlier. Stated another way, the suspension of the Certificate of Qualification to bid is not the equivalent of rejecting Dickerson's previously submitted bids because it was not a responsible bidder. Further, we do not construe the language "suspends your Certificate of Qualification" to include invalidation of pending bids made prior to the suspension. See Couch Construction Co., Inc. v. Dept. of Transportation, 361 So.2d 184 (Fla. 1st DCA 1978) (where this Court recognized the distinction between awarding a contract to the lowest "responsible" bidder, and qualification to bid on a project). No statutory provision in Chapter 337, Florida Statutes (1979) and (Supp. 1980), requires that a suspension of the qualification to bid affect bids already submitted. In fact, Section 337.14(6), Florida Statutes (1979) provides:

*925 Subject to such restrictions, [limiting the certificate to a class of work and an amount of work] the certificate of qualification shall authorize the holder to bid on all work on which bids are taken by the department during the period of time therein specified.
Here, the "bids were taken" before the effective date of Dickerson's suspension. Also, pursuant to Florida Administrative Code Rule 14-22.12, it is apparent that not every reason for suspending a Certificate of Qualification is accompanied by a disqualification and rejection of the bids already submitted. For example, disqualification because of delinquency status requires disqualification only from "further bidding." Fla. Admin. Code Rule 14-23.01. This is not to say that it is improper to reject a bid on the same grounds given for suspending a Certificate of Qualification. Rather, in determining the agency action taken, we are distinguishing between action suspending a Certificate of Qualification "to bid" and action rejecting bids earlier submitted under an effective Certificate of Qualification. Therefore, the January 5th letter did not offer a clear point of entry concerning action involved in the December 31st letter.[4]
Furthermore, it is plain that a determination among bidders as to the lowest responsible bidder, is a matter of substantial interest. Couch Construction Co., Inc. v. Dept. of Transportation, supra, quoting with approval:
"[T]he right of a bidder for a public contract to a fair consideration of his bid and his right to an award of the contract if his is the lowest, responsible bid are matters of `substantial interest' to him, thus entitling him to a hearing pursuant to § 120.57 ..."
361 So.2d at 186. See also Couch Construction Co., Inc. v. Dept. of Transportation, 361 So.2d 172, 175 (Fla. 1st DCA 1978) (where this Court commented that Couch rightly considered that its substantial interests were affected by the Department's determination to reject all bids); United States Services Industries-Florida v. Dept. of Health and Rehabilitative Services, supra, n. 4 (recognizing the substantial interests involved by a low bidder whose bid has been rejected).
Accordingly, after carefully examining the sequence of events in this case, we conclude that DOT cannot claim that the request for Section 120.57(1) proceedings on the rejection of Dickerson's bids came too late under the terms of the January 5th letter and base its denial of a stay on this reason. However, a reason stated in the order denying the stay was that the projects were awarded prior to receipt of the petition and motion to stay. We affirm the denial of the stay insofar as it requests a stay of the contract awards. Obviously, neither we nor the agency can stay that which has already occurred. However, because the motion for stay was also directed toward agency action in furtherance of the award, we caution that should DOT continue with the contracts despite Dickerson's apparently timely application for administrative review, its actions would be considered "free-form" action until a hearing was held. Id. 385 So.2d at 1148. In United States Service Industries, the petitioner, the apparent low bidder, protested an award by HRS to another bidder as improper, requesting a Section 120.57(1) hearing. HRS proceeded to execute the contract and petitioner sought a stay of that action in this Court. Believing that rapid review would occur under Section 120.57(2) proceedings, *926 this Court denied the petition and vacated its temporary stay order. However, informal proceedings did not rapidly occur and when performance of the contract was imminent, petitioner again sought this Court's aid. We explicitly ordered HRS to immediately conduct an informal hearing. We characterized HRS' actions as follows:
In bidding procedures, we find there can be no final agency action until the agency has afforded a requesting petitioner a § 120.57(2) hearing. HRS proceeds at its peril if it awards a contract prior to final agency action. Absent a violation of the terms of a clear point of entry for § 120.57(2) proceedings (as established by rules, regulations, or particular terms of a contract or offer to bid), should HRS continue with a contract despite application for administrative review by a disappointed bidder, such action by HRS would be considered "free-form" action until a hearing was held. [Emphasis added.]
385 So.2d at 1148.
Furthermore, in J.A. Jones Construction Co. v. Dept. of General Services, 356 So.2d 863 (Fla. 1st DCA 1978), where, upon considering a stay of agency action pending review, this Court stated:
The petition does not exhibit an agency order or otherwise indicate that proceedings under Section 120.57(1) or (2) have been had by the agency leading to such an order, or that such proceedings have been denied. Proceedings complying with Section 120.57 and an order complying with Section 120.59 being essential to any lawful action by the agency, it appears that the petition is premature. [Emphasis added.]
356 So.2d 864. Accord, Capeletti Brothers, Inc. v. Dept. of Transportation, 362 So.2d at 348-349. Therefore, though we deny a stay concerning any decision of DOT to begin performance on the contracts, we warn that DOT proceeds at its peril should it do so.
In accordance with the views expressed above, we deny the petition to stay and remand the cause for further proceedings consistent with this opinion, noting that we do not intend by this opinion to express a view on the merits of the action taken in the December letter or to foreclose a showing by DOT that Dickerson has waived a clear point of entry into Section 120.57 proceedings concerning the December letter based upon factual or legal matters not addressed in this opinion.
SHIVERS, SHAW and THOMPSON, JJ., concur.
NOTES
[1] 15 U.S.C.A. § 1 (West Supp. 1981).
[2] Section 120.57(1), Fla. Stat. (1979).
[3] DOT apparently issued the January 5th letter in compliance with its specific rule on the subject of suspending certificates of qualification. Fla. Admin. Code Rule 14-7.06.
[4] While the model rules provide for waiver of a right to a hearing 21 days after the agency's decision, it is clear that DOT did not give notice pursuant to this rule. Florida Administrative Code Rule 28-5.111 provides:

Unless otherwise provided by law or agency rule:
(1) Persons requesting a hearing on an Agency decision which does or may determine their substantial interests shall file a petition with the agency within twenty-one (21) days of receipt of written notice of the decision... The notice shall state the time limit for requesting a hearing and shall reference the agency's procedural rules. [Emphasis supplied].
See also United States Service Industries-Florida v. Dept. of Health and Rehabilitative Services, 385 So.2d 1147, 1149 (Fla. 1st DCA 1980).