LARRY G. SMITH, Judge.
The Magnolias Nursing and Convalescent Center appeals a final order of the Department of Health and Rehabilitative Services fining appellant $5,000.00 for operating a nursing home for a period of fifty-four days without a licensed nursing home administrator. Appellant relies for reversal upon its contention that the hearing officer erred in dismissing Magnolias’ requested Section 120.57(1) formal hearing, and in basing his order finding a violation of the statute sole *423 ly upon matters deemed admitted because of Magnolias’ failure to answer the Department’s request for admissions. After its initial brief was filed, Magnolias was granted leave to file an amendment challenging the constitutionality, as applied, of the statute under which it was penalized, Section 400.141(1), in conjunction with Section 400.-121, Florida Statutes. Finding no error in the rulings of the hearing officer, and further finding no unconstitutionality in the application of the statutes, we affirm.
Magnolias answered the Department’s administrative complaint by denying any violation of the statutes, and requesting a Section 120.57(1) hearing. In response, the Department filed requests for admission, essentially requesting that Magnolias admit the material allegations set forth in the administrative complaint. A scheduled hearing was continued at Magnolias’ request. The hearing was then rescheduled, at which time Mr. Bennett (a co-owner of the capital stock of the corporation owning Magnolias) appeared for Magnolias, but because of an emergency, the Department’s counsel was unable to attend. No evidence was presented by Magnolias at this hearing, but Mr. Bennett did give notice of his challenge to the constitutionality of the statute. Because of the nonappearance of the Department’s counsel, the hearing officer entered an order to show cause why the complaint should not be dismissed for failure of proof. The Department responded with a letter explaining and apologizing for its counsel’s failure to attend the prior hearing, and informing the hearing officer that the Department did not intend to present any evidence at the hearing, but intended to rely upon the request for admissions. Enclosed with the letter was a motion requesting that all matters alleged in the complaint be deemed admitted because of Magnolias’ failure to respond to the request for admissions, and, since there existed no disputed issues of material fact, for dismissal of the formal hearing.
On August 7, 1981, the hearing officer entered an order reciting that under Rule 1.370(a); Florida Rules of Civil Procedure, matters set forth in a request for admissions not denied within thirty days, are deemed admitted. The order gave Magnolias ten days from the date of the order to respond to the request for admissions, otherwise the facts would be deemed admitted and a recommended order would be entered that the formal hearing be dismissed, and the matter be continued in an informal proceeding, since no disputed issues of fact would then exist. Upon Magnolias’ failure to respond, on September 8, 1981 the hearing officer entered an order dismissing the formal proceeding on the grounds that there were no disputed issues of fact.
On September 21, 1981, Magnolias filed objections to the request for admissions, claiming, among other things, that to be required to admit all essential allegations of the complaint would in effect deprive it of its constitutional right to defend against the allegations and charges, and would unlawfully relieve the Department of its burden of presenting the necessary quality and quantum of proof required to sustain and support these charges. On February 8, 1982, the Department entered a final order imposing a fine of $100.00 per day for each day of the violation, which continued for fifty-four days, but reduced the fine to a total of $5,000.00 to conform to the limitations contained in Section 400.121, Florida Statutes. On February 22,1981, Magnolias directed a letter to the Department raising certain matters in mitigation. This letter conceded that Magnolias had operated without a licensed administrator on two separate occasions for a period totalling fifty-four days, but that on each occasion the administrator had left the institution for personal reasons without notice, and without affording Magnolias an opportunity to obtain a new administrator. The letter also asserted that on each occasion extensive efforts were made to attempt to obtain a licensed administrator, to no avail, since there was a shortage of qualified personnel, especially in Pensacola, where the nursing home was located. The Department declined to reduce the fine on the grounds that the hearing process had already terminated, and appellant lodged this appeal.
*424 Upon consideration of the issues in the order in which they are presented in Magnolias’ brief, we first conclude that the hearing officer’s dismissal of the formal Section 120.57(1) hearing was not imposed as a sanction for appellant’s failure to respond to the request for admissions, as Magnolias argues. Once it appeared that there were no disputed issues of fact, which necessarily was the case after Magnolias’ failure to answer the request for admissions, and failure to timely respond to the hearing officer’s show cause order, there was no necessity for a formal hearing. Therefore, Great American Banks Inc. v. Division of Administrative Hearings, 412 So.2d 373 (Fla. 1st DCA 1981), holding that a hearing officer has no authority to impose sanctions for failure to comply with an order requiring testimony of certain witnesses and production of documents, does not apply. Magnolias was not denied due process, as it urges here; it simply failed to demonstrate here or below that there were disputed issues of material fact entitling it to a Section 120.57(1) hearing. Florida Department of Transportation v. J.W.C. Company, Inc., 396 So.2d 778 (Fla. 1st DCA 1981); United States Service Industries-Florida v. Department of Health and Rehabilitative Services, 383 So.2d 728 (Fla. 1st DCA 1980).
We next consider appellant’s contention that the statute, Section 400.141, Florida Statutes, and Rule 10D-29.46, Florida Administrative Code, are unconstitutional as applied. The pertinent provisions of Section 400.141 are as follows:
Every facility shall comply with all applicable standards, rules, and regulations of the Department of Health and Rehabilitative Services and shall:
(1.) Be under the administrative direction and charge of a licensed administrator, supervisor, or manager.
[[Image here]]
We note at the outset that the statutes do not, as appellant urges, permit a nursing home to operate under the direction and supervision of a supervisor or manager who is not a licensed nursing home administrator. There are several statutory provisions pertinent to the operation of nursing homes by licensed nursing home administrators. The particular statutory provisions singled out by appellant, Section 400.141, is a statute of general application to all types of health-related facilities covered by various provisions of Chapter 400, Florida Statutes. These facilities include nursing homes, adult congregate living facilities, home health agencies, adult day care centers, and hospices. Thus, whether the person in charge of a particular facility must be an “administrator,” “supervisor,” or “manager,” and the qualifications or licensing requirements which must be met in order for that person to be an administrator, supervisor, or manager of that facility, must be determined by reference to the statutes relating to the kind of facility in question. Once this essential step is taken it is clear that appellant’s contention that the law is vague and ambiguous is without merit.
The basic statutory prohibition against operation of a nursing home without a licensed nursing home administrator is found in Section 400.20(1), Florida Statutes, which provides:
(1) No nursing home shall operate except under the supervision of a licensed nursing home administrator, and no person shall be a nursing home administrator unless he is the holder of a current license as provided by law.
A nursing home is a particular species of health care facility, defined in Section 400.-021. Section 400.041 further distinguishes nursing homes from other facilities by providing for the licensing of nursing homes in a separate category, apart from the licenses for other health-related facilities.
The term “administrator” is also distinguished from the terms “manager” and “supervisor,” by Section 400.021(2) defining “administrator” as “the licensed individual who has the general administrative charge of a facility,” and (3) which provides that “manager” or “supervisor” means “the individual in charge of homes for aged, homes for special services, and related health care facility homes.”
*425 Chapter 468, Part V, provides specifically for the licensing of nursing home administrators. Section 468.1645 reiterates the requirements of Section 400.021(2), above quoted, by prohibiting the operation of a nursing home “unless it is under the management of a currently valid licensed administrator or holder of a provisional license.”
Finally, Section 468.1635, which sets forth the legislative “purpose” with respect to enactment of the licensing requirements for nursing home administrators, strongly supports the Department’s interpretation of the statutes and their enforcement by means of the action taken in this case. Appellant’s contention that the law is somehow vague or ambiguous must fail.
Appellant further maintains that under Rule 10D-29.46, which it is also charged with violating, the primary function of a licensed nursing home administrator is that of a “record keeper.” Appellant argues that it is therefore incumbent upon the Department to prove that Magnolias failed to maintain proper records before any violation can be sustained. We reject appellant’s interpretation of the rule, and agree with the Department’s view that the rule merely implements the statutes, without limiting in any respect the duties and responsibilities of a licensed nursing home administrator in the operation of a nursing home. The rule tracks the statute by requiring each nursing home to be under the direct management control of a licensed nursing home administrator. The fact that subsection (2), subparagraphs (a) through (h) impose extensive record-keeping requirements in no way diminishes the responsibility of the administrator for the overall control and operation of the facility. It is clear from the entire context of Chapter 400, as well as the licensing requirements of Chapter 468, that a nursing home administrator’s responsibility is essentially to shelter and protect the health and well being of physically and often mentally infirm patients. The licensure requirements of Section 468.1695 in themselves reflect the breadth of knowledge and experience required of such administrators in the discharge of their duties. Appellant’s characterization of the function of a nursing home administrator as that of a “record keeper” is simply not borne out by anything in the statutes or the Department’s rules.
Appellant also argues that this case is governed by State v. Leone, 118 So.2d 781 (Fla.1960). Again, we disagree. In that case the Florida Supreme Court found Section 465.18(1), Florida Statutes (1959), unconstitutional. That statute required the presence of a licensed pharmacist on the premises of a retail drug establishment at all times when it was open for business or engaged in the business of dispensing drugs or medical supplies, and made a violation of the statute a criminal offense. The pharmacy operated by the defendant, Leone, was of the modern type which sold many “neutral” goods, such as food and cosmetics, in addition to controlled drugs and medical supplies. In striking down the statute, the court found that the regulation was not reasonably related to the state interest in seeing that controlled drugs were dispensed only under the control of a licensed pharmacist, and that it had not been shown that it was reasonably necessary to preclude the conducting of other non-drug related business in order to accomplish the legitimate purposes of the act.
To liken this case to the Leone case we would have to assume that the need for the special expertise of a qualified nursing home administrator arises only on limited and predictable occasions, so as to present the need for a skilled administrator at these particular times, but not at other times. Only then would we be concerned with a Leone type issue, that is, whether in order to achieve the state’s purpose of assuring proper supervision “when needed,” it is reasonable to require that the facility be continuously under the supervision of a qualified professional. Common sense tells us that it is impossible to compartmentalize the typical nursing home day or week so as to require skilled supervision at certain hours, or on certain days, but not at other times. We think it is obvious that in order *426 to assure the proper operation and supervision of such a facility, it is necessary that a skilled administrator be present or immediately available, on a continuous basis, although we point out that the “physical presence” of the administrator on the premises at all times is not required by the statute.
It is apparent that the factual distinctions between this case and those present in the Leone case prevent the application of that decision to invalidate the statute as applied here. The Leone court struck down the statute in that case because it could not find any necessity for the presence of a licensed pharmacist when the drug store was open for business selling shampoo and over-the-counter cold remedies, for example, but not engaged in the preparation or dispensing of controlled drugs. In other words, the court could not find such a reasonable relation between the whole operation of the drug store and the public purpose to be obtained by the act to justify the presence of a licensed pharmacist at all times. Nor did it appear to the court that these other “innocent acts” (sales not pertaining to the preparation and dispensing of controlled drugs) were so “interrelated and entwined” as to make it necessary to impose the requirement of supervision by a licensed pharmacist in order to obtain “reasonably successful enforcement” of the statute. We see no way, on the record before us, that the considerations guiding the court in Leone can be applied here. As noted, the physical presence of the administrator on the premises at all times is not required by the statute.
We note also that the reasonableness of the statutory prohibition in question is enhanced, to a degree, by the Department’s rule 10D-29.46, which allows a nursing home administrator to serve a maximum of three facilities, so long as each facility has a qualified assistant, duly licensed as required by the rule, to act in the absence of the regular administrator at each facility. Appellant’s contention that the imposition of the maximum penalty is unreasonable and oppressive in our opinion does not warrant a finding of unconstitutionality, particularly in view of the flexibility allowed by this rule, where the violation occurred over a period of fifty-four days. Based upon our consideration of the foregoing and other arguments presented by appellant, we find the constitutional challenge to be without merit.
The Department’s findings being fully supported by the record, and the penalty being within the permissible range of the statute, Section 400.121(2), Florida Statutes, this court is without authority to interfere with the penalty imposed. Florida Real Estate Commission v. Webb, 367 So.2d 201 (Fla.1978).
AFFIRMED.
JOANOS and NIMMONS, JJ., concur.